## COTHRAN *v.* WITHAM.

C. executed the following contract: "This is to certify that I have this day bought of [W.] five shares of the capital stock of [a named bank], and in consideration of the price paid, and for value received, I hereby agree not to sell all or any part of the stock at any time, until I have first offered the same to [W.] in writing at the book value of said stock, giving him ample time to accept or refuse the purchase, binding my heirs, executors, and administrators in the above option and agreement." In a suit by W. against C. for the breach of the contract, *Held:* (1) The contract was not void for indefiniteness as to the time when it should become operative. (2) It was not unilateral. (3) The allegations of special damage were too general, vague, and speculative to be the basis of a recovery. (4) W. was entitled to recover nominal damages only.

Argued January 31, — Decided June 14, 1905.

Action for damages. Before Judge Reid. City court of Atlanta. January 4, 1904.

*Brown & Randolph,* for plaintiff in error.
*Spencer R. Atkinson* and *E. Winn Born,* contra.

FISH, P. J.　W. S. Witham brought an action for damages against J. C. Cothran for the breach of the contract following:

STOCK OPTION.

" This is to certify that I have this day bought of W. S. Witham five (5) shares of the capital stock of the Bank of Cartersville, Ga., and in consideration of the price paid, and for value received, I hereby agree not to sell all or any part of the stock at any time, until I have first offered the same to W. S. Witham in writing at the book value of said stock, giving him ample time to accept or refuse the purchase, binding my heirs, executors, and administrators in the above option and agreement.

"Witness, T. H. Willis.　　　　　　　J. C. Cothran."

The petition alleged that the defendant sold the five shares of stock to other parties on March 16, 1903, without having first in any way offered them to the plaintiff. General damages were laid in the sum of five thousand dollars. Paragraph 9 of the petition was as follows: "(9) Your petitioner shows, that, by reason of the said sale of stock by said defendant, your petitioner lost, in the way of profits, $300.00; that said sale forced your petitioner to buy six shares of the capital stock of said bank at the cost of $15.00 per share over and above the book value of said stock, making $90.00; that your petitioner's expenses were $34.-00 in the way of railroad fare and lawyer fees; that he was president and financial agent of the Bank of Cartersville, and on account of said breach of said option your petitioner lost control of said bank as president and financial agent, which positions paid your petitioner $500.00 per year, thereby greatly damaging your petitioner to the extent of $4,500." The petition was demurred to on the grounds: "(1) Said petition sets forth no cause of action. . . (2) The damages alleged to have been sustained in said petition are too remote and speculative to be the basis of any legal recovery. . . (3) Paragraph 9 of said petition fails to allege why it was necessary for the petitioner to buy six shares of the stock referred to therein, and from whom the same were bought, and fails to set forth the market value of the stock and the price paid by petitioner, and also fails to set forth what sum or sums were paid by petitioner by way of railroad fare, and to what railroad, and when and why; and said paragraph is too vague and indefinite, and there are no sufficient allegations therein to charge this defendant with liability for the repayment of any of the sums therein mentioned." To meet the demurrer, the ninth paragraph of the petition was amended, in substance, as follows: Plaintiff, at the time he sold the five shares of stock to the defendant and for a long period of time prior thereto, was president and financial agent of the Bank of Cartersville, and for his services as such he was entitled to and did receive the sum of $500.00 per annum. In making the sale of the stock to the defendant, he reserved the right to repurchase the same, on the terms set out in the contract, for the purpose of retaining control of the majority of the stock, in order to secure his re-election to the presidency of the bank, all of which was well known to the

defendant. For the purpose of preventing the re-election of the plaintiff to the presidency of the bank, the defendant, without offering the five shares of stock to the plaintiff, who was willing to purchase them under the terms of the contract, sold them to other parties, who were opposed to the plaintiff's re-election, and by this means plaintiff, at the next annual election, was defeated for the presidency. The particulars of the purchase by the plaintiff of the six shares of stock and his expenses incident thereto, mentioned in the ninth paragraph of the original petition, were fully set out in the amendment. It was further alleged in the amendment, "that it was necessary, in order for him to protect his rights in the premises, to give notice of his rights in respect of said shares of stock [the five shares he sold to defendant] to said bank, with notice not to transfer the said shares upon the books of said company; that it was necessary for him to employ counsel for said purpose, and . . for said services he paid [named counsel] the sum of $25.00, the same being in all respects a reasonable charge for the services in that respect rendered;" and that by the breach of the contract by the defendant the plaintiff had been injured and damaged, "in manner and by means aforesaid, in the sum herein mentioned." The amendment was allowed subject to demurrer. The demurrers previously filed were urged against the petition as amended. The demurrers were overruled, except as to the damages sought to be recovered on account of the purchase by the plaintiff of the six shares of stock and expenses incident thereto, and all allegations in the original petition and in the amendment thereto in reference to this matter were stricken. The defendant excepted to the overruling of the general demurrer, and of the special demurrer as to matters other than the purchase of the six shares of stock by the plaintiff. Counsel for the plaintiff in error insist here that the court erred in overruling the general demurrer, for three reasons: (1) The contract for the breach of which the action was brought "was void for uncertainty and indefiniteness, there being no time fixed in the contract within which it was to become operative." (2) It was unilateral, in that only Cothran was bound by its terms. (3) The damages sought to be recovered are too remote and speculative, and do not flow logically and proximately from a breach of the contract.

1. The contract was not void for uncertainty and indefiniteness in that no time was fixed for it to become operative. Such a time was fixed in express terms, viz., whenever Cothran decided to sell; then, before selling to another than Witham, he was to offer the stock to Witham, in writing, at its book value. Counsel for the plaintiff in error also argued that the contract was against the policy of the law, in. that it placed an indefinite restriction upon the alienation of the stock, and violated "the rule against perpetuities." We can not concede the soundness of this argument, as we think it clear that the right of Cothran to sell the stock at any time he might see fit was not restricted, save that before selling it to one other than Witham he was bound to offer it to the latter, in writing, at its book value; and that in any event the contract would have terminated upon the death of Witham.

2. The contract was not unilateral. The agreement of Cothran to offer the stock to Witham, at its book value, before selling it to another, appears to have been part of the transaction of the sale of the stock by Witham to Cothran, and to have entered into its consideration. In view of the terms of the contract, it is presumable that Witham would not have sold the stock to Cothran at the price at which the latter bought, if Cothran had not agreed that before he sold to another he would give Witham the right to repurchase upon the terms stated. See Hayes *v.* O'Brien, 23 L. R. A. 555.

3. The allegations as to the loss of $300 profits were too general, and the special demurrer thereto should have been sustained. Under the provisions of the Civil Code, § 3799, the fee of $25 paid to attorneys for notifying the bank not to transfer on its books the stock sold by Cothran was clearly not recoverable, and the special demurrer to the allegation setting it out should have been sustained.

4. For the breach of a contract by one party the other may recover nominal damages. Civil Code, § 3801. Witham, therefore, was entitled to recover nominal damages for the breach of the contract. The allegations of damage on account of his defeat for the office of president and financial agent of the bank at the election next succeeding the alleged breach of the contract by Cothran, however, were too contingent and specu-

lative to be the basis of a recovery.  It was not alleged that had Cothran retained the stock he was under any obligation, legal or otherwise, to vote it for Witham in the election of officers.  Apparently there was no restriction on his right to vote it for whomsoever he chose.  Nor was he under any obligation to sell the stock to Witham before the election took place, thus putting it in Witham's power to control the stock independently of him.  In order to recover damages on these allegations, then, one of two alternatives must be assumed, viz., either that Cothran would have sold the stock to Witham before the election if he had not sold it to the parties to whom he did sell; or that, in the event he had not sold the stock at all, he would have voted it for Witham for president and financial officer of the bank.  In the nature of things, neither of these alternatives is susceptible of proof.  It follows that, under the allegations of the petition, Witham is entitled only to nominal damages for the breach of the contract, and that the defendant's special demurrer should have been sustained.

*Judgment reversed.  All the Justices concur, except Simmons, C. J., absent, and Lumpkin, J., not presiding.*